## Georgetown Construction Company v. Moss & Donovan

(Decided February 1, 1927.)

### Appeal from Scott Circuit Court.

1. Appeal and Error—Jury's Conclusions on Conflicting Evidence are Conclusive.—Where evidence was conflicting, jury's conclusions under proper instruuctions afford no basis for reversal, notwithstanding that appellate court might disagree with them.

2. Damages—In Subcontractor's Action for Decreased Output of Crushed Stone and Failure to Pay for "Chips," additional Producing Expense Held for Jury.—In action against contractor by subcontractor, crushing stone, for damages for decreased output due to defective machinery and failure to furnish sufficient trucks, and for failure to pay for "chips," additional expense, if any, in putting out additional stone and separating "chips," held for jury.

3. Contracts—Contractor Need Not Pay Alleged Contract Price for "Chips" Unless it Agreed to so Pay when it Ordered Subcontractor to Run Them with Other Stone.—In action against contractor by subcontractor crushing stone for damages for failure to pay for "chips," instruction that, if defendants agreed to pay larger price for chips and later directed plaintiffs to run chips with other stone, plaintiffs were entitled to payment, held error for not requiring agreement to pay contract price at time plaintiffs were ordered to run chips with other stone.

4. Damages—Subcontractor's Additional Producing Expense should be Deducted from Additional Amount Due to Determine Recovery for Decreased Output and Contractor's Failure to Pay for "Chips."—In action against contractor by subcontractor, crushing stone, for failure to pay for "chips," and for decreased output caused by plaintiff, additional expense of separating "chips" from stone and of crushing additional stone should be deducted from additional amount due at contract price to determine amount of recovery.

5. Contracts—Instruction that, if Contractor Agreed to Pay Subcontractor Larger Price for "Chips," and Later Directed Him to Run Chips with Other Stone, Subcontractor could Recover, Held Misleading.—In action against contractor by subcontractor, crushing stone, for damages for failure to pay for "chips," instruction that, if defendants agreed to pay larger price for chips and later directed plaintiffs to run "chips" with other stone, plaintiffs were entitled to payment, held misleading, in that it did not require agreement to pay contract price at time plaintiffs were ordered to run chips with other stone.

LESLIE W. MORRIS, L. F. SINCLAIR and JAMES BRADLEY for appellant.

FORD & FORD and BRADLEY & BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Appellants during the time covered by the contract out of which this litigation grew were a firm composed

of J. W. Coyle, J. M. Perkins and R. E. Mason and they were engaged in the business of constructing public highways in the state of Kentucky under contract with the State Highway Commission. They obtained a contract from the State Highway Commission in the latter part of 1924 to construct certain portions of the public highway between Georgetown and Owenton, and the next spring they made a contract with appellees, Moss and Donovan, a firm composed of Clarence Donovan and Henry Moss, under which contract the appellees were to produce for appellants crushed stone to be used by them in connection with the carrying out of their contract. Under the terms of the contract between appellants and appellees, the appellants were to furnish appellees (1) rock in the quarry; (2) adequate and suitable engine, crusher, screens and other equipment necessary for the production of said stone; (3) provide and furnish sufficient trucks or wagons to haul the stone from the crusher as it was crushed; (4) to pay appellees 73 cents per ton for all stone crushed and delivered.

While the contract was verbal there seems to be little disagreement as to the general terms of it. There is a sharp disagreement, however, as to the price which was to be paid for the services to be rendered under the contract by appellees. The payment was to be based on the tonnage, and the price per ton which was to be paid by appellants for the crushed stone was 73 cents, but appellees contend that the 73 cents tonnage price covered only the crushed stone and did not include what is known as "chips;" that appellants were to pay them for the "chips" produced the price of $1.50 per ton. This is denied by appellants, and we believe the most tangible controversy between the parties is over this one item. It is contended by appellees that after making the contract appellants directed them not to separate the "chips" from the other crushed stone but to run them all through together and the appellants would pay for the "chips" the same as if they had been separated. It is also contended by appellees that appellants refused to furnish the necessary screens or equipment for separating the "chips" from the other crushed stone. It is alleged by appellees and substantiated by their testimony that they produced 21,749 tons of crushed stone and of this not less than 15% of the total amount of crushed stone

would have been "chips" if appellees had been allowed to separate the "chips" from the crushed stone, or that there would have been 3,262.35 tons of "chips" if they had been allowed to separate them as it was agreed should be done at the time the contract was made, according to their contention. The total tonnage produced seems to have been slightly modified by the checking up of the State Highway Commission. Appellees contend that they were paid on the basis of 73 cents a ton for the "chips" which they would have produced and that there was a balance due them on this item of $2,512.00. This may be called the first item in their complaint.

All of this is denied by appellants, who insist that there was no agreement as to "chips" and that the full price which they were to pay was 73 cents per ton for the entire tonnage produced.

The second item on which appellees base a claim for damage or compensation is that they produced 21,794 tons of crushed stone including the "chips" and that at the price of 73 cents a ton, as contended for by appellants, they should have received $15,876.77, but they were in fact paid only the sum of $15,696.27, leaving a balance due and unpaid of $180.50.

This is denied by appellants, who contend that on a final checking up of accounts it was found that they had overpaid the appellees in the sum of $117.67, for which they make a counterclaim.

A third ground upon which appellees base their cause of action is that appellants failed and refused to furnish sufficient wagons or trucks to haul the stone away from the crusher after it was crushed, and that by reason thereof appellees were compelled to shut down a great portion of the time. This ground was amended, and it was claimed appellees were compelled to shut down or cease operations on account of defective equipment furnished by appellants. Appellees contend that if they had not been compelled to shut down their operations by reason of these things they would have produced 8,000 tons additional, of which 15% would have been "chips," and that their compensation would have been thereby increased $6,764.00.

This is all vigorously denied by appellants, who claim that it was understood at the time the contract was entered into that no claim should be made by either party

against the other on account of delays caused by matters incident to the business.

The fourth ground of complaint set up by appellees is that they furnished three meals each day for the truck drivers employed by appellant during the period covered by the contract, or a total of 1,704 meals, and that appellants agreed to pay a reasonable price therefor, which would be $426.00, and that only $100.00 had been paid, leaving a balance of $326.00.

Appellants claim that there was an agreement as to the meals furnished the truck drivers and that they were to pay $100.00, for these meals, which has been paid.

The fifth and last complaint made by appellees is that by reason of the inadequacy of the engine furnished by appellants it was necessary to install a motor, and that appellees incurred an additional expense in the way of electric current and other expenses in the sum of $385.00. Appellants admit that the motor was installed, but insist that the operation thereafter was less expensive than before the installation of the motor.

The total amount which appellees sought to recover by reason of the alleged breaches of the contract was $10,167.50. The issues were made up with the pleadings clearly disclosing each separate issue.

We have examined the evidence with care and it is as conflicting as it is possible for evidence to be. The appellees support their claims by the evidence, and if they are correct and if their witnesses were believed by the jury a verdict in favor of appellees was justified. The evidence was equally strong and in some instances probably stronger for appellants, but the evidence was for the jury, and the fact that we might disagree with the conclusions reached by the jury affords no basis for a reversal of any case submitted to a jury under proper instructions. Such lawsuits as this one are to be determined by juries, and where the evidence is conflicting the verdict of the jury should not be disturbed if the rights of all the parties were fully protected as to the law by the instructions of the court. The instructions in this case given by the court are numerous and those offered by appellants and refused by the court are still more numerous. While there were a number of issues to be determined by the jury they were not complicated and it was peculiarly within the province of the jury to deter-

mine the correctness of the contentions made by the parties under the law as submitted to them by the court and under the evidence.

This case has been exceedingly well briefed on both sides, which is always of material assistance to the court in reaching a conclusion as to the correctness of the proceedings in the lower court. The jury found for appellees and rendered a verdict in their favor for the sum of $2,593.10. We cannot search the minds of the jury to determine what particular evidence induced them to return this verdict or to find out whether the verdict is a part of some particular claim advanced by the appellees or whether it is a combination of more than one of the claims advanced.

The evidence largely revolves around the claim for damages growing out of the failure of appellant to pay for "chips" according to the contract price as contended for by appellees, and the damages, if any, caused by the delay on the part of appellants in moving the crushed stone away with sufficient rapidity to enable appellees to prosecute their work continuously, or because of the failure of machinery and equipment furnished by appellants to enable appellees to prosecute their work continuously.

The serious question in the case is the correctness of the instructions given by the court. It is most earnestly insisted by counsel for appellants that the instructions given the jury covering the right of appellees to recover because they were not paid for "chips" and covering their right to recover because of delays, are erroneous because they should have confined the right of recovery to such profits as appellees might have derived from the additional tonnage produced or as they might have derived from the production of the "chips." Appellants cite two cases which they insist are conclusive of this question; that is, the case of Langstaff Orm Manufacturing Company v. Wilford, 160 Ky. 733; Janin, Trustee v. Herron, 206 Ky. 171, and they say that there are many other cases in harmony with the two cases cited. We agree with them that there are numerous cases announcing the same doctrine, so the matter for us to determine is whether the doctrine announced in these cases is applicable to the facts adduced in the case under consideration. In the first case cited above the appellee had a

contract with appellants to cut, haul and deliver lumber from a tract of land, which lumber was to be delivered to appellant at $5.00 per thousand feet. Under this contract a quantity of the lumber was cut and delivered in accordance with the contract when the appellant refused to allow appellee to continue under the contract. Appellee brought his action seeking to recover the contract price for certain lumber which he had delivered as well as for damages by reason of the breach of the contract. The court properly held that the measure of damages for the breach of the contract was ''the difference between the contract price and the reasonable cost of carrying out the contract.''

In the second case cited the court stated:

''The measure of damages to which appellee Herron was entitled, if any, was the net profit he would have realized from the contract by manufacturing the ties at twenty cents per stick, and the lumber at seventy-five cents per 100 feet, which, of course, is the difference between the reasonable cost of manufacturing the ties and lumber and the price at twenty cents per tie and seventy-five cents per 100 feet for the lumber, if any difference there was.''

Counsel for appellants insist that these two cases are exactly in point and that the court by the instructions should have confined the recovery, if any, to the reasonable profit which appellees would have received from the additional tonnage produced or from the ''chips.''

On the other hand, counsel for appellees readily admit the soundness of the principles found in the two cases cited and other cases holding to the same doctrine, but they argue that the instant case does not come within the law as announced in these cases. It is insisted by appellees that they are suing for additional tons that they could have produced during the time they were working with the same force and without additional expense. If the appellees could have produced a greater tonnage without incurring any additional expense their case does not fall within the well settled principles governing the measure of damages in a suit for loss of profits. We can very well see that the expenses might continue while production was stopped, and in such a case it would not be proper to deduct the amount of expenses actually paid

out fruitlessly from the cost of production if the expenses which were so paid out would have paid for production but for the fault of appellants. The machinery and equipment in use was largely, if not entirely, the property of appellants which they had agreed to furnish, and it cannot be urged with plausibility that the production of additional tonnage would have caused any expenses to appellees on account of the wear and tear of the machinery. If the entire expenses of the operation continued for any period of time when nothing was produced by reason of the failure of appellants to carry out their part of the contract, it seems to us that the loss to appellees was the full value of the tonnage which might have been produced during the period of idleness. Counsel for appellants insist, however, that it was impossible to produce additional tonnage without additional expense, and under the method of operation in this case that may be true, but at least under the proof in this case there were some of the expenses which should not be deducted from the cost of production in order to determine the loss of appellees. If appellees had a full quota of laborers present capable of operating the business for ten hours a day and through the negligence of the appellants the operation was only conducted for eight hours and appellees had to pay their laborers for ten hours, it is easily seen that the cost of labor should not be deducted from the contract price in order to determine the loss to appellees. All of these matters were for the jury under proper instructions, and we have reached the conclusion that the only matter for consideration in this case is whether the instructions fairly presented the issues to the jury. The court gave or approved fifteen instructions and appellants offered nineteen others which were refused by the court. No serious complaint is made of any of the instructions which were given except the first and second, and more particularly the second instruction. Instruction No. 1 given by the court is as follows:

"The court instructs the jury that if they believe from the evidence that the defendants agreed with plaintiffs that they would pay them $1.50 per ton for all the chips crushed by them, and that defendants later directed plaintiffs to run the chips together with the other stone and that they only paid plaintiffs therefor $0.73 per ton, then you will find for the

plaintiffs on this item and award them as damages $0.77 per ton on the amount of chips they believe from the evidence would have been produced from said stone crushed, if any, not to exceed on this item the sum of $2,512.00; and unless you so believe you will find (for) defendants.''

This instruction is not satisfactory and we do not believe that it clearly presents the law, or rather it is misleading. The instruction tells the jury that if appellants agreed with appellees that they would pay them $1.50 per ton for all the ''chips'' crushed by them and that appellants later directed plaintiffs to run the ''chips'' together with the other stone then they should find for appellees the unpaid balance for the ''chips.'' The instruction seems to give the jury the right to find for appellees because appellants later directed the appellees to run the ''chips'' together with the stone. If the appellants directed the appellees to run the ''chips'' together with the stone and the appellees did this without any objection or without any further agreement as to their receiving a greater price for the ''chips'' than for stone, the contract to pay an additional price for the ''chips'' would probably have been ended. The court should have inserted after the word ''stone'' in this instruction and before the word ''and'' these words, ''and agreed to pay for the 'chips' which could have been produced the original contract price for 'chips,' if there was such a price for 'chips.' '' This instruction also should have confined the recovery to the contract price for the ''chips,'' if any such price, less any additional expenses which might have been necessary in separating the ''chips'' from the stone. Therefore these words should have been inserted after the words ''said stone crushed, if any,'' and before the words ''not to exceed,'' to-wit, ''less any additional expense which might have been necessary in separating the 'chips' from the stone.''

The second instruction on the measure of damages may be substantially correct, but for the sake of clearness on another trial the paragraph in the instruction setting up the measure of damage should be eliminated and the following inserted in lieu thereof:

''If you find for plaintiffs under this instruction you will first find the number of additional tons of

stone, if any, you believe from the evidence plaintiffs would have crushed but for such failure, if any, on the part of defendants, and then determine the amount which plaintiffs would have received by calculating the stone at 73 cents per ton for the entire additional tonnage, if any, and 77 cents per ton additional for the chips, if any, and deduct from the amount thus obtained the additional cost, if any, to which you may believe from the evidence plaintiffs would have been put in getting out said additional crushed stone, if any, and separating the chips therefrom, if any, the whole amount not to exceed the sum of $6,764.00.''

The other instructions given by the court seem to fairly present the law of the case to the jury. For the errors indicated in instructions No. 1 and 2 the case must be reversed.

The judgment of the lower court is reversed for proceedings consistent with this opinion.